May it please the court, my name is Corey Gangle. I represent David and Julie King in this particular case, and I just, my reply brief that I submitted to the court really outlines our position in the case. So I just will get kind of right to the main point. Our main heartburn with the district court's order, or series of orders, is the fact that we contend the district court did not analyze the issue of coverage from a duty to indemnify standpoint, but rather issued it only from a duty to defend standpoint. That is our primary issue in this case. My clients, the Kings, are the third-party beneficiaries of this insurance policy, and therefore, although we did in fact bring it up in our initial complaint for coverage in the district court action, there really would not be a duty to defend because they didn't pay for the policy. They're just simply the beneficiaries of the coverage. So if you look at the district court's ruling, and I did again last night just to make sure I was on track, everything that the district court points to is there is no duty to defend. And the district court made a quantum leap in the last part of its order that there is no duty to defend, and therefore, no duty to indemnify based solely on the allegations contained in the underlying complaint. If we agree with the district court's reading of the policy that the facts here simply do not rise to an occurrence as defined in the policy and the case law, doesn't that sound the death knell to both the duty to defend and the duty to indemnify? Your Honor, I would ask where those facts come from. The facts... Your client's intentional decision to use goods that they knew were nonconforming in proceeding to construct the log cabin, for which they now want $600,000 in damages because they claim it has to be torn down and completely rebuilt with new material. Your Honor, let me just address that. The $600,000 is awarded by a jury of my client's peers as to what needed to be done to fix this problem. Well, I'm quarreling with the dollar amount. What I'm asking you about under the case law is why your client's decision was not an intentional act as opposed to an accidental or fortuitous event that triggers the definition of occurrence under this comprehensive general liability policy. Thank you, Your Honor. As we pointed out in our brief and as was discussed at trial, there is no element of intent here. There was no indication that this was an intentional act. My clients were under the gun with their construction lender to build this house. They had no choice. They could not afford to put this house on hold and wait until they file a lawsuit for these logs and then continue to build it. The fact that they acted by coercion, if I can use that term to characterize what you just said, is by definition not accidental. Your Honor, it's the log package that we're focused on. They built it and after it was completed, based on representations made by the underlying manufacturer, Lincoln Logs, after the home was completed, it was determined that these logs are in fact defective and will not sustain this home. But they knew that as soon as the kit was delivered to the construction site. That's what triggered their complaint. Your Honor, they knew there were problems with the logs. No question about that and they addressed those problems with the defendants, Lincoln Logs and Duncan Woods. And the defendants refused to replace them with what were, in your client's view, more conforming materials and so your client made the deliberate decision to incorporate them and tell the builder, go ahead and finish the house. That's correct, Your Honor. What my clients did not know, after constructing those logs and putting this home package together, that those logs would fail. They did not know that they were going to actually require the home to be demolished and be removed. That came out after it was completed and during the trial process. Had they known that you build it, you're going to tear it down, they would not have gone through that process. Well, I'm still having a hard time seeing an accident here because it sounds to me like a series of intentional decisions to proceed and sadly for your clients, and I'm very sympathetic to the fact that here they were building their dream, I assume, retirement home and now they're left with a home that's not fit for habitability, I guess. Your Honor, our position on the word accident is that word accident is not actually described in the policy. It's not outlined as what constitutes an accident and we rely, there's two cases that we cited to the court. The case of American Mutual Insurance Company versus Team Corp out of the District of Colorado and a Ninth Circuit case, DeWitt Construction versus Charter Oak Insurance, to show that similar incidents of defective construction that causes consequential damages where the materials have to be torn out and removed does in fact constitute an occurrence. Why shouldn't we look to Blair versus Mid-Continent Casualty Company, a decision of the Montana Supreme Court, to apply the substantive law of Montana? Your Honor, I think you can, but the Supreme Court of Montana has not ever addressed the corollary rule that we've addressed in our arguments that faulty workmanship, while it may not constitute an occurrence, the consequential property damage may. In your view, does the Phelan analysis apply here? I'm sorry, Your Honor. I apologize. It's not coming to my mind what that is. Thank you. Because one thing we do know from looking at these cases in diversity on insurance policies, we've had the term accident before. We know that accident in Oregon, for example, means something different than accident in California, for example. So I kind of go back to Judge Tallman's question. It seems that we really need to look at accident under Montana law and not under Colorado law. And it seems to me that this, I'm having trouble fitting this into anything in the Montana cases that would put it in the occurrence category. What do you think is the best Montana case we should look at? Your Honor, I don't really know the answer to that question because Montana law on some of these issues is relatively new. And Montana has, again, not addressed the consequential damage issue. And that's one of the things we pointed out in our court, in our briefings, that we're urging the court to adopt the Ninth Circuit rule that I just discussed of consequential damages being property damages relevant to an occurrence, as well as the District Court of Colorado's position on that particular matter. I take it because of the fact that Duncan was assigned all of their rights to the Kings in satisfaction of the judgment, there was no appeal taken to the Montana Supreme Court on these issues. It wouldn't be because of the assignment, Your Honor. The assignment did actually not come out until after the appeal time had expired. They just did not appeal. With that, the only remaining point, Your Honor, is that we do not believe there would be any policy exclusions that apply for two reasons. One, the District Court judge did not address policy exclusions in his rulings. And two, when you look at the cases cited in our reply group, we believe that in these particular circumstances, the exclusions do not apply. Thank you. Thank you. We'll hear from State Farm. May it please the Court, Martha Sheehy, representing State Farm Fire. I'd like to first address Corey Gangle's point that this was a case that was analyzed incorrectly under the duty to defend. Under Montana law, the duty to defend is much broader than the duty to indemnify. And in this case, the District Court correctly looked at all eight claims that were raised in the underlying complaint and established that none of those claims gave rise to a duty to defend. In doing that, the Court also determined, by inclusion, that the three claims upon which the jury rendered a verdict, those two, as part of that analysis, simply were not covered. The jury reached a verdict on breach of contract, misrepresentation in the inducement of a contract, and deceptive practices in the contract. So this case was, the underlying case, was and always has been a breach of contract claim. It started as a breach of contract claim when they entered into the contract. The Kings signed a written contract with Duncan Woods for the sale of a product, a log home kit. This is not like the cases from Colorado and Florida, maybe it wasn't Florida, anyway, the DeWitt and American Home cases, because this is not a construction case. This is a contract case. They entered into the contract for the sale of the kit. Duncan Woods delivered the log home kit. The Kings agent, John Brewer, whom they'd hired to construct the building, determined that the log home kit was deficient. As stated by the plaintiffs in their brief, they determined that these were non-conforming goods under the UCC, and they proceeded with contract remedies. First, they asked Duncan Woods to cure. Duncan Woods refused to cure. Kings were then faced with a choice. They chose a contract remedy. They decided to mitigate their damages, accept the goods, build the house, and sue for contract damages. This is a contract case with contract remedies throughout. The jury only returned verdicts on contract, breach of contract, and representations made to induce the contract. You can look to the kinds of construction cases that Corey talks about, but those cases aren't applicable here because Montana has already determined these things in the framework of breach of contract. In daily ditches, the Montana Supreme Court held that termination of employment contract and the related breach of the implied covenant within that contract does not constitute an accidental occurrence. Under similar language to this policy, the court emphatically held that there was no duty to defend or indemnify for that contract claim. We're kind of moving away from these boxes of contract. If the ceiling had fallen in and injured somebody, there would be coverage, I would assume, for something. For what? That would depend. If it were our work, if we had constructed the ceiling and it had fallen in, it might fall within the your work exclusion unless it damaged someone else's property, which is similar to what happened in the revelation case. You can come outside of the your work exclusion if there's damage to someone else's property or if a subcontractor is the one who performs the work. So if the subcontractor had taken our product, we didn't have a subcontractor in this case, and performed it negligently and damaged somebody else's property or created bodily injury, there's a possibility that there would be a duty to defend. But in this case, that didn't happen. We delivered a log home kit. The log home kit was accepted and a breach of contract claim was filed. So there isn't a negligence claim here, an accidental occurrence claim. This gets to the very basic nature of a liability policy, which is it covers accidental. It isn't meant to bond, it isn't a surety, it isn't a guarantee of the performance of the insured. Would you help me reconcile or match up Montana law on Blair and Phelan? Because you cite Blair, but then Blair distinguishes Phelan, and Phelan seems to have language of an occurrence that's really similar to what we're looking at here. So do you see any distinction between the two, or which of these should we be looking to to figure out whether there's an occurrence? Well, in this case, I think you look directly to Blair. The parties in this case haven't relied upon Phelan, we haven't looked at Phelan, but the breach of contract cases are clear in this case. And because this is not an ongoing negligence case, it isn't a full-blown construction defect case. The construction occurred after our work was done. The other thing that's important to point out is that Portal Pipeline is actually pretty close on this case. In that case, there was an issue of products coming through a pipeline, and an insurance company refused to defend, and I think it's really important to note that the court looked specifically at the your product exclusion. The district court didn't have to go here, but the exclusions in this case help define in your mind what this policy is all about. So beyond occurrence, you look at the product. We delivered the log home kit. Our policy excludes anything arising out of that product. And the court stated in Portal Pipeline, the purpose of this type of exclusion is intended to eliminate the possibility that the insured will either cut corners or take unreasonable risks in the performance of the insured's operations, and then shift the loss to the insurers. Well, we're here on a summary judgment de novo contract interpretation, so even though the district court didn't look at the exclusions, we could look to the your work exclusion potentially as an alternate basis. Yes, it was fully briefed, and the assertion that this wasn't addressed below, while the court didn't rely on it, under this court's decision in Burrell v. McElroy, 464 F. 3rd, 853, a 2006 decision, and many other decisions of the court, the court reviews summary judgment de novo and may affirm on any basis stated in the record. This was amply briefed. It simply wasn't reached because the district court felt that the law was so clear. Stopped at occurrence. Yes. But the, I do think it's important, as you ask, where does this fall in Montana law? Because the exclusions really do tell you this is not meant to be covered. The exclusions put the insured on notice. This is not a bond. This is not a guarantee. We're not a surety for your performance. You still have to perform. And give me the example of the classic, you insured the company that provided the wrong stuff. What's the classic situation in which you would cover the incident? If my company manufactured log home kits and built the log home, so they hired a subcontractor who then used the logs to build a log home, and there was an allegation of negligence in the design of the log home kit, an allegation that the construction of the log home kit by a subcontractor resulted in property damage to someone else's property, that would possibly be covered under the policy. But it would require subcontractor action because of the your work exclusion. So for example, in Taylor McDonald construction, a contractor was sued for faulty workmanship in building a roof on our prison museum in Montana. Your work and your product exclusions were held to apply, even though the roof failed and there was damage, because it's widely recognized as a valid limitation upon standard readily available liability insurance coverage. Okay, so but if you're, I'm trying to get the, if you're insured, had a driver who ran over somebody on the way to make a delivery, you would clearly cover that? We would under the auto policy. Well, what if you go in the shop and one of these things falls on your head? That's an accident. That's an accident. Right. If we hired a subcontractor to deliver it, and in the delivery he scraped open the package and three logs rolled out, fell on someone's leg and broke the leg, that'd be covered. But the product itself, the work, we don't guarantee their work, and we don't guarantee that they will perform their contracts. That, I don't believe there is insurance available for breach of contract, which was one of the problems with the estoppel claims, is that there was no proof that there was any coverage available for a breach of contract. So the business risk exclusions, in addition to the language of occurrence, really put the insured on notice. This is not a guarantee. This is not the type of thing we cover, as does the completed operations exclusion, which says when your work is finished, it's not an ongoing operation, we don't cover you, because we only cover accidents that occur during the course of the work. And in this case, everything ended when they chose to accept and built with the log home kit. I want to briefly address the estoppel claim. Estoppel is recognized under Montana law, but it requires clear and convincing proof, and in the second motion, separate from the first, we addressed that in the district court, and the district court correctly found that estoppel did not apply. There were three separate grounds for it. Montana has some sort of convoluted law on this, but I think it's important to note that the Ellinghouse case, upon which plaintiffs relied below and in the brief, requires that there be other insurance available, that the plaintiff put on proof that there is some sort of insurance that they could get. Ellinghouse also requires that the insured rely upon the assurance of a defense. And in this case, we never insured Lincoln Logs of a Defense. They never tendered the defense. In fact, Duncan Woods, our named insured, tendered the defense to Lincoln Logs. In conclusion, the district court correctly ruled on all of these issues. This is a breach of contract claim. They never alleged negligence. They started with the breach of the contract. They sought remedies under the UCC and state law breach claims, and as a result, these claims simply aren't covered under the state foreign policy. Thank you. You have some time left, Mr. Gangle, if you'd like to take that. Just a few seconds of your time, Your Honor. If state farms' position is accepted as the new state of the law when it comes to insurance coverage, essentially what will happen is litigants who do not allege negligence in their underlying claims will be punished for not doing so. The result is, and this is why I was really focused on the duty to indemnify, it's the facts proven at trial or throughout the scope of the case that give rise to the issue of coverage. And we proved a couple of things at trial that are relevant to this case. First and foremost, there's been a statement that Lincoln Logs was just a seller of log cabins. That's not accurate. At trial, it was proven that Lincoln Logs manufactured these logs. They're the ones that did the draw knifing on the logs, which as it turns out is ineffective. And so they provided this package. And I'm going to take another position here in response. And that is, they assumed the risk by not providing a conforming package upon notice, they assumed the risk that these logs would be put into this home and that this home would be damaged as a result. And that is exactly what happened. It was proven at trial that the home has been damaged. And in order to get to the underlying problem, that is replacing the logs, then all of the other stuff has to come off too. And that is property damage. But if we accept the interpretation that Ms. Sheehy is offering that the contract is complete upon the delivery of the package to the job site, I'm still having a hard time getting around the Montana case law that denies the existence of an occurrence based on intentional acts. Your Honor, our position on that is that it wasn't complete. It wasn't, Lincoln Logs and Duncan Woods were still working with the Kings all the way up until that long haul was actually the logs were installed and they were put up. They were on site, they were helping, they were dealing with issues. In fact, a couple of times they brought out extra logs to try to remedy some of the situations while it's being built. So I think that probably pretty much covers our argument. And unless the Court has any other questions, we appreciate the Court's time. Thank you. Thank you. Thank you both for coming from Montana and for your argument this morning. Case just argued of King v. State Farm is submitted.
judges: Schroeder, McKeown, Tallman